**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| **JESSE GARCIA, JR.**, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. Action No.:14-7403 (FLW) |
| | : | |
| **COMMISSIONER OF SOCIAL SECURITY**, | : | **OPINION** |
| | : | |
| | : | |
| Defendant. | : | |

---

<u>**WOLFSON, United States District Judge**</u>:

    Jesse Garcia, Jr. ("Plaintiff") appeals from the final decision of the Acting Commissioner of Social Security ("Defendant") denying Plaintiff disability benefits under Title II of the Social Security Act (the "SSA") and supplemental security income benefits under Title XVI of the SSA. Plaintiff contends that the record does not support the decision made by the Administrative Law Judge (the "ALJ"), because the ALJ failed to, *inter alia*, consider all of Plaintiff's impairments, improperly determined that Plaintiff's impairments did not meet the requirements of an intellectual disability under the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"), and improperly determined Plaintiff's residual functional capacity ("RFC").

    After reviewing the Administrative Record, this Court finds that the ALJ properly considered the pertinent evidence of Plaintiff's impairments and that the ALJ's findings were based in substantial evidence. Accordingly, I affirm the decision.

## I.    Factual Background and Procedural History

Plaintiff applied for social security disability benefits and supplemental security income benefits on June 27, 2011. Administrative Record (hereinafter "A.R.") 33. His application was initially denied on August 24, 2011, and reconsideration of the application was denied on February 7, 2012. *Id*. Thereafter, Plaintiff requested a hearing before an ALJ. *Id*. On March 28, 2013, Plaintiff, represented by counsel, Richard Frankel, Esq., appeared and testified at the South Jersey Hearing Office before ALJ Christopher Bullard. A.R. 50. On April 26, 2013, the ALJ issued a decision finding that Plaintiff was not disabled under the SSA. A.R. 44. Subsequently, Plaintiff requested review by the Appeals Council. A.R. 28. The Appeals Council denied Plaintiff's request on September 24, 2014. A.R. 1. On November 27, 2014, Plaintiff filed this appeal.

Plaintiff was 22 years old on March 15, 2009, the beginning date of his alleged disability, resulting from a learning disorder, borderline intellectual functioning, short attention span, inability to focus, and difficulty reading and writing. Administrative Record A.R. 33, 96-97, 204, 248. Prior to his disability date, Plaintiff completed his high school education with special education classes. A.R. 249. Plaintiff previously worked as a dishwasher, telemarketer, and counter clerk at both a fast food restaurant and grocery store. A.R. 250, 254. Plaintiff lived with his parents, but was able to independently care for his personal needs, care for his pets, prepare simple daily meals, perform household chores, watch television, play video games, ride a bicycle and a quad vehicle, drive a car, shop in stores, and regularly attend church. A.R. 260-64, 268-72. He was not on any medication for his condition when he applied for SSA benefits. A.R. 250.

### a.  *Review of the Observational Evidence*

#### i.   **School Records**

2

Plaintiff attended high school special education classes from 2002 until his graduation in 2005, under the supervision of the Child Study Teams for the Lakewood Board of Education and Toms River Board of Education. A.R. 249, 318-19, 423. His Individualized Education Program, relied, in part, on two evaluations: (1) a December 7, 1999 psychological evaluation, which indicated that Plaintiff had a below average performance IQ score of 70, verbal IQ score of 65, and overall IW score of 65; and (2) an October 22, 1999 educational evaluation, which indicated that Plaintiff had deficits in reading, writing, and math, although he was cooperative, friendly, and had broad knowledge. A.R. 322. Plaintiff was also assessed as having no behavioral concerns in some portions of the Individualized Education Program, but in other portions was described as having task related behavioral issues. A.R. 321, 322, 335. Based on these assessments, Plaintiff was placed in the alternate behavior program for academics, which focused primarily on improving Plaintiff's reading skills and readiness for the future. A.R. 321. As part of this program, Plaintiff was given more time than other students to complete written lessons and tests, and was given assignments with lower readability materials A.R. 326.

On January 6, 2003, Plaintiff was re-evaluated by the Toms River Child Study Team, after transferring from Lakewood High School to Toms River High School North. A.R. 339. Again, Plaintiff was assessed as having no behavioral concerns in some portions of the Individualized Education Program (i.e. his behavior was "adaptive"), but in other portions he was described as having "difficulty completing assignments." A.R. 394, 421, 425. The Child Study Team determined that Plaintiff was unable to attend regular classes, even with in-class support. A.R. 348, 373-74. Consequently, Plaintiff entered the Project SAVE Program, which focused on teaching him daily living and vocational skills for his post-graduation life. A.R. 373-74, 383-84, 394. Plaintiff remained in this program until 2005, when he graduated. A.R. 249.

3

### ii.    Jesse Garcia Sr. - Third Party Function Report

On July 19, 2011, Jesse Garcia Sr., Plaintiff's father, completed a Third Party Function Report detailing Plaintiff's impairments, which Plaintiff submitted as evidence of his disability. A.R. 260-67. Mr. Garcia Sr. reported that on a daily basis Plaintiff made breakfast and lunch, played video games, and rode his bike. A.R. 260. Mr. Garcia Sr. explained that Plaintiff was able to care for his pet dog and fish, but that he needed to be reminded to care for them, and often became angry when reminded. A.R. 261. He reported that Plaintiff did not need help with personal care and confirmed that Plaintiff was taking no medication. A.R. 261-62. Mr. Garcia Sr. described how, with reminders, Plaintiff would take out the garbage and clean his room. A.R. 262. He reported that Plaintiff primarily spent time with family, or by himself, but would attend church regularly. A.R. 264. Mr. Garcia Sr. also explained that Plaintiff was capable of shopping by himself, but had difficult reading and writing. A.R. 263. According to Mr. Garcia Sr., because Plaintiff wanted to work, but could not, he would sometimes get angry and frustrated, pace, and yell. A.R. 260. Mr. Garcia Sr. described how Plaintiff had trouble dealing with authority, would get angry when criticized, had a short attention span, was easily frustrated, and had difficulty filling out job applications. A.R. 265. In Mr. Garcia Sr.'s opinion, Plaintiff was unable to follow written instructions, but could follow oral instructions to some extent. *Id*.

### b.  *Review of the Medical Evidence*

### i.    William Coffey, Psy.D. – Examining Psychiatrist

At the request of the New Jersey Division of Disability Determination Services, Dr. William Coffey examined Plaintiff once, on August 16, 2011, to assess the severity of Plaintiff's impairments, in connection with his application for disability benefits. A.R. 505. Dr. Coffey interviewed Plaintiff and administered the Wechsler Adult Intelligence Scale-Fourth Edition test

(the "WAIS-IV"). *Id*. Dr. Coffey's examination was made for assessment purposes only and he did not prescribe any treatments for Plaintiff's impairments. A.R. 505-8.

Plaintiff reported to Dr. Coffey that he spent time riding quad vehicles with friends. A.R. 506. He also reported that he had a driver's license and was able to drive. *Id*. Plaintiff reported that he had no medical conditions and took no medications. *Id*. Dr. Coffey recorded normal mental status findings, including normal mood, speech, and conversation, and appropriate affect and eye contact. *Id*.

The WAIS-IV indicated that Plaintiff had a full scale IQ of 66; placing him at the high end of the mildly deficient range of intellectual functioning. *Id*. Plaintiff's full scale IQ was a composite of the following subtest scores: a verbal comprehension score of 63, a perceptual reasoning score of 81, a working memory score of 66, and a processing speed score of 74. A.R. 506-7. Dr. Coffey opined that although Plaintiff's overall IQ placed him in the mildly mentally retarded range, his functional capacity was within the borderline range. A.R. 507. Dr. Coffey found that Plaintiff demonstrated adequate understanding and memory, but only limited concentration, mental pace, and persistence. *Id*. Based on these determinations, Dr. Coffey found that Plaintiff's Global Assessment of Functioning ("GAF") score was 70 with some mild symptoms, and that he had borderline intellectual functioning. *Id*. He diagnosed Plaintiff with ADHD based on Plaintiff's history, but determined that this condition, together with his other impairments, would not prevent Plaintiff from performing simple, rote labor. A.R. 507-8. Dr. Coffey did not find that Plaintiff was impaired by any physical or environmental limitations. A.R. 508.

### ii.    Leland Mosby, Ed.D. – Examining Psychologist

At the request of Plaintiff's counsel, Richard Frankel, Dr. Leland Mosby also examined Plaintiff once, on April 16, 2013, to assess the severity of Plaintiff's impairments, in conjunction

with his application for disability benefits. A.R. 516. Dr. Mosby interviewed Plaintiff and administered the WAIS-IV. A.R. 518. The results of the WAIS-IV administered by Dr. Mosby were generally consistent with the results of the same exam administered by Dr. Coffey. *Id*. Dr. Mosby's examination was made for assessment purposes only, and he did not prescribe any treatments for Plaintiff's impairments. A.R. 516-21.

Plaintiff reported that he never received mental health treatment, he was not taking medication, and was in good health. A.R. 516. He reported that he took Ritalin as a child for symptoms of ADHD. A.R. 517. Dr. Mosby recorded that Plaintiff had normal affect; stable mood; good sleeping patterns, appetite, and energy; clear, logical, and goal directed speech; and fair social interaction and judgment. A.R. 520. Dr. Mosby assessed Plaintiff's social interaction as limited. *Id*.

The WAIS-IV indicated that Plaintiff had a full scale IQ of 62, a verbal comprehension score of 63, a perceptual reasoning score of 75, a working memory score of 71, and a processing speed score of 59. A.R. 517-18. Dr. Mosby indicated Plaintiff's WAIS-IV scores were consistent with Plaintiff's academic history. A.R. 518. Dr. Mosby opined that living with his parents provided Plaintiff with the level of structure and support he needed. A.R. 519. He did not believe Plaintiff was capable of managing his own finances, balancing a checkbook, or writing checks without assistance. A.R. 520. Dr. Mosby described Plaintiff's prognosis for improvement as "poor" given his history and academic performance. *Id*. He determined that Plaintiff functioned in the borderline range of general intelligence, had severe cognitive limitations, and had poor adaptive functioning. A.R. 520-21. He diagnosed Plaintiff with ADHD based on his history. A.R. 521.

c.   *Review of the Disability Determinations*

i.   **Michael D'Adamo, Ph.D. – Psychiatric Review Technique Assessment**

On August 24, 2011, Dr. Michael D'Adamo reviewed the evidence of disability submitted by Plaintiff and assessed Plaintiff's level of impairment. A.R. 79-94. Dr. D'Adamo determined that Plaintiff was moderately restricted in activities of daily living, mildly limited in social functioning, and moderately limited in concentration, persistence, or pace, with no episodes of decompensation. A.R. 82-83. He opined that Plaintiff had the ability to take simple spoken instructions and perform slow-paced jobs with rote procedures, which do not require much mental effort. A.R. 84. He concluded that Plaintiff was capable of working as an unskilled minimum wage employee, as he had previously. A.R. 85. Accordingly, Dr. D'Adamo determined that Plaintiff was not disabled under the meaning of the SSA. A.R. 86.

### ii.     Jane Shapiro, Ph.D. – Psychiatric Review Technique Assessment

On February 3, 2012, Dr. Jane Shapiro also reviewed evidence of disability submitted by Plaintiff and assessed Plaintiff's level of impairment. A.R. 99-116. Dr. Shapiro confirmed Dr. D'Adamo's assessment that Plaintiff was moderately restricted in activities of daily living, mildly limited in social functioning, and moderately limited in concentration, persistence, or pace, with no episodes of decompensation. A.R. 103. She also opined that Plaintiff had the ability to take simple spoken instructions and perform slow-paced jobs with rote procedures. A.R. 105, 113. Like Dr. D'Adamo, Dr. Shapiro concluded that Plaintiff was capable of working as an unskilled minimum wage employee, and therefore, Plaintiff was not disabled under the meaning of the SSA. A.R. 106.

### d.  Review of the Testimonial Evidence

### i.     Plaintiff's Testimony

At the hearing before the ALJ on March 28, 2013, Plaintiff testified that he had attended special education classes since he was in seventh grade. A.R. 56. Plaintiff also testified that he

possessed a driver's license, and despite his "slim" ability to read and write, explained that he could identify street signs by their shape. *Id*. Plaintiff explained that although he had held numerous jobs, he had difficulty retaining a position, and his longest period of employment was six months as a dishwasher. A.R. 57. Plaintiff further explained that he was ultimately fired from this dishwashing job for performing his duties too slowly. A.R. 57-58. Plaintiff testified that he had recently started a new full-time job, a month prior to the hearing, as a heating and cooling repairman. A.R. 58-59. Plaintiff described how he spent his free time playing video games or watching TV, and that he did not often socialize with his friends. A.R. 60-61.

Plaintiff testified that he was currently not on any medications to treat his poor concentration. A.R. 58. Plaintiff explained that he had previously been prescribed Ritalin to treat his inability to focus, although he had not been formally diagnosed with any disorder related to this impairment. *Id*. According to Plaintiff, his parents discontinued this treatment, because they did not observe any improvement. *Id*.

Plaintiff was questioned by the ALJ as to whether he received assistance when taking his written driver's license exam, filling out employment and social security applications, or managing his finances. A.R. 59-60. Plaintiff testified that he had previously received help with these tasks from his father or a teacher. *Id*.

### ii.    Joseph Vitolo, M.D. – Medical Expert Testimony

Joseph Vitolo, M.D., an impartial medical expert, reviewed the record and testified at the hearing that Plaintiff was mildly limited in activities of daily living; mildly limited in social functioning; moderately limited in concentration, persistence, or pace; and had experienced no episodes of decompensation. A.R. 61-62. As a result, the doctor opined that Plaintiff did not meet the requirements of any of the impairments on the Impairment List and could perform simple

repetitive tasks with one-to-two step commands. A.R. 62-63. Dr. Vitolo also noted that the record did not support the consultative examiners' (Drs. Coffey and Mosby) diagnoses of ADHD, because there was no indication, other that Plaintiff's own self-reporting, that Plaintiff ever received Ritalin or other treatment for the disorder, and his school records contained no evidence of hyperactive behavior. A.R. 63. He also opined that Plaintiff's adaptive functioning was higher than that indicated solely by his IQ scores. *Id*. In support of this opinion, Dr. Vitolo noted that Plaintiff's school records revealed that he was functioning in the low average range, he obtained a driver's license, and he rode quad vehicles with his friends. A.R. 63-64.

### e.   The ALJ's Findings

In a decision dated April 26, 2013, the ALJ determined that Plaintiff met the insured status requirements of the SSA, and would continue to meet them through September 30, 2011. A.R. 32-33. After reviewing the record and applying the relevant law, the ALJ found that Plaintiff was not disabled, within the meaning of the SSA, from March 15, 2009 through the date of the ALJ's decision. A.R. 33, 45. In reaching this conclusion, the ALJ applied the standard five-step evaluation process to determine if Plaintiff satisfied his burden of establishing disability.[1]

At step one, the ALJ noted that Plaintiff's work activity since his alleged disability onset date did not rise to the level of substantial gainful activity, and deferred a finding on whether Plaintiff's current employment constituted substantial gainful activity.[2] A.R. 35. At step two, the

---

[1] *See infra* Part III.

[2] Regardless of whether Plaintiff's job as a heating and cooling repairman was full-time, he was already ineligible for benefits, because the ALJ determined that he was not disabled under the SSA.

9

ALJ found only that Plaintiff's borderline intellectual functioning was a severe impairment. A.R. 36.

At step three, the ALJ determined that Plaintiff's borderline intellectual functioning, in conjunction with his other impairments, was not medically equal to any of the impairments on the Impairment List. A.R. 36-38. Specifically, the ALJ analyzed whether Plaintiff's impairments, taken together, constituted an intellectual disability under section 12.05 of the Impairment List. A.R. 36.

The ALJ found that Plaintiff did not meet the requirements of section 12.05(a) of the Impairment List because Plaintiff did not depend on others for personal needs (i.e. toileting, eating, dressing, or bathing). *Id*. On that point, the ALJ explained that Plaintiff had indicated that he had no problems with personal care, could make simple meals and sandwiches, could wash dishes, take out the garbage, ride a bicycle, drive a car, and shop in stores for clothing. *Id*. In addition, the ALJ cited Dr. Coffey's report, which states that Plaintiff could cook, had a driver's license, and could drive. *Id*.

The ALJ also opined that Plaintiff did not meet the requirements of section 12.05(b) of the Impairment List, because he did not have a valid verbal, performance, or full scale IQ score of less than 59. *Id*.

The ALJ next determined that Plaintiff did not satisfy the requirements of section 12.05(c) of the Impairment List ("Section 12.05(c)"), because although he had a full scale IQ score between 60 and 70, he did not have a physical or other impairment imposing a significant work-related limitation or function. A.R. 36-37. In making this determination, the ALJ noted that although Plaintiff had testified that he had been treated with Ritalin (used to treat ADHD) in school, none of the treatment notes in the record indicated that Plaintiff had ever been formally diagnosed with

ADHD, or that Plaintiff was taking any medication to treat this condition. A.R. 37. To the contrary, the ALJ observed that the Individualized Education Program indicated that Plaintiff was a cooperative and friendly student, with no behavioral concerns. *Id*. The ALJ asserted that although Drs. Coffey and Mosby diagnosed Plaintiff with ADHD during their examinations, these conclusions should be discounted, because they were based solely upon Plaintiff's subjective history, instead of the doctors' own observations during the examinations. *Id*. The ALJ also relied on the testimony of Dr. Vitolo, who, after reviewing the record, did not find any evidence, other than Plaintiff's own self-reporting, that Plaintiff had ever been diagnosed with ADHD or received Ritalin, or any other treatment for ADHD. *Id*. The ALJ also concluded that Dr. Mosby's finding that Plaintiff had poor adaptive function was inconsistent with his evaluation notes, which indicated that Plaintiff was capable of completing domestic chores, household duties, could function independently, could go shopping alone, and had a driver's license. *Id*. As further evidence that Plaintiff was not severely impaired by a lack of adaptive functioning, the ALJ cited to Dr. Coffey's report, which noted that Plaintiff could cook and had a driver's license. A.R. 37-38. In addition, the ALJ referenced Plaintiff's indication in his Adult Function Report that he had no personal care impairments, could cook, wash dishes, take out the garbage, ride a bicycle, drive a car, and shop for clothing. A.R. 37. The ALJ also pointed to Plaintiff's success in attaining multiple jobs since his graduation from high school and his current employment as a heating and cooling repairman, which is a skilled job. A.R. 38.

The ALJ further determined that Plaintiff did not meet the requirements of section 12.05(d) of the Impairment List, because Plaintiff did not have two of the following factors: marked restriction of activities of daily living; marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration; persistence, or pace; or repeated episodes of

decompensation, each of extended duration. *Id.* The ALJ opined that Plaintiff had only a mild restriction of daily living. *Id.* In addition, the ALJ found that Plaintiff had only mild difficulties in social functioning, because although he tended to stay by himself most of the time, he also participated in social events like church and activities with friends. *Id.* In coming to this conclusion, the ALR relied on Plaintiff's Adult Function Report, Dr. Coffey's report, Mr. Garcia Sr.'s Third Party Function Report, and Dr. Mosby's evaluation. *Id.* Next, the ALJ determined that Plaintiff has moderate difficulties with persistence and pace, based on the Adult Function Report's indications that Plaintiff had difficulties remembering directions and could not follow written instructions, as well as Mr. Garcia Sr. and Dr. Mosby's reports that Plaintiff's attention level was poor. A.R. 38-39. However, the ALJ held that Plaintiff's impairment in this area did not rise to the level of a "marked difficulty," since Plaintiff enjoyed playing video games, could finish tasks, and could count change. *Id.* Finally, the ALJ noted that Plaintiff experienced no episodes of decomposition. A.R. 39.

Next, at step four of his assessment, the ALJ concluded that Plaintiff retained the RFC to perform simple, repetitive tasks with simple instructions at all exertional levels. A.R. 39-43. In making this determination, the ALJ considered Plaintiff's testimony regarding his ability to read and write, ability to drive, regular daily activities, job history, educational history, and past medical history. A.R. 39-40. Additionally, the ALJ considered Mr. Garcia Sr.'s statement that Plaintiff gets frustrated, angry, yells, and paces, because he wants to work but cannot due to his learning disability, as well as his assessment of Plaintiff's difficulty reading and writing, trouble dealing with authority figures, vulnerability to criticism, short attention span, and inability to focus. A.R. 40. The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms described by Plaintiff; however, the ALJ found Plaintiff and Mr.

Garcia Sr.'s statements concerning the intensity, persistence, and limiting effects of these symptoms not entirely credible, based on the objective medical evidence in the record. *Id*. Additionally, the ALJ noted that because Mr. Garcia Sr. did not appear to have any training in medicine or vocational rehabilitation, his statement should be given limited probative value. *Id*.

The ALJ noted that no medical evidence in the record indicated that Plaintiff's learning disability would preclude him from performing simple, repetitive work, with simple instructions. *Id*. The ALJ acknowledged that Plaintiff's school records indicated that he performed below grade level, with deficits in reading, written language, and math, but cited to Plaintiff's testimony that he was able to successfully graduate high school. *Id*. The ALJ relied on school records indicating that Plaintiff had broad knowledge, was cooperative and friendly, had no behavioral concerns, and had previous success working as a summer camp counselor. *Id*. Moreover, the ALJ observed that Plaintiff, himself, had testified that he had performed multiple jobs in the past, including his current job as a heating and cooling repairman. A.R. 41. Furthermore, Plaintiff testified to having the necessary ability and focus to read the newspaper, drive a car, and play video games. *Id*.

The ALJ also relied on Dr. Coffey's report, including his observations that Plaintiff had normal mood, appropriate affect, normal psychomotor activity, and normal stream of conversation, with no evidence of a thought disorder, obsessions, compulsions, or suicidal thinking. A.R. 40-41. And, the ALJ credited Dr. Coffey's opinion that Plaintiff's functional capacity was better characterized as being in the borderline range based upon his adaptive functioning. *Id*. The ALJ noted that Dr. Coffey concluded that Plaintiff had adequate functioning to perform simple, rote labor. A.R. 42. The ALJ assigned great weight to Dr. Coffey's opinion. *Id.* Not only did Dr. Coffey personally examine Plaintiff, but the ALJ also found the doctor's opinion to be consistent with the record as a whole. *Id*.

13

In that same vein, the ALJ relied on Dr. Mosby's observations that despite Plaintiff's poor attention level, he had normal affect; stable mood; good sleeping patterns, appetite, and energy; clear, logical, and goal directed speech; and fair social interaction and judgment. A.R. 41. However, the ALJ assigned little weight to Dr. Mosby's opinion that Plaintiff's social interaction was limited, his general adaptive functioning was poor, and he had severe cognitive limitations, because it was inconsistent with Dr. Mosby's own evaluation notes, other objective medical evidence in the record, and the record as a whole. A.R. 42.

The ALJ assigned great weight to Dr. Vitolo's testimony that Plaintiff was only mildly limited in activities of daily living and social functioning, and moderately limited in concentration, persistence, and pace, with no episodes of decompensation, because Dr. Vitolo reviewed the entire record and his opinion was consistent with the record as a whole. *Id*. The ALJ also relied on Dr. Vitolo's opinion that Plaintiff can perform work that involves simple repetitive tasks with one-to-two step commands. *Id*. However, the ALJ questioned Dr. Vitolo's conclusion that Plaintiff's social function is limited, because the ALJ found no evidence in the record to support this conclusion. *Id*.

Similarly, the ALJ also assigned great weight to the opinions of Dr. D'Adamo and Dr. Shapiro that Plaintiff was mildly limited in social functioning and moderately limited in concentration, persistence, or pace, with no episodes of decompensation, as their opinions were consistent with the objective medical evidence and the record as a whole. *Id*. The ALJ relied heavily on Dr. D'Adamo and Dr. Shapiro's assessments that Plaintiff could handle simple spoken instructions, and could adapt to and perform slow-paced, rote jobs. A.R. 42-43. However, the ALJ assigned little weight to Dr. D'Adamo and Dr. Shapiro's opinions that Plaintiff was moderately limited in activities of daily living, as the ALJ found no evidence to support these conclusions in

14

the record. A.R. 42. Moreover, the ALJ determined that their opinions were inconsistent with Plaintiff's admitted activities of daily living, such as personal care, cooking, household chores, riding a bicycle, driving a car, and shopping for clothing in stores. *Id*.

Considering the inconsistencies between Plaintiff's testimony, the evidence of record, and the medical findings of the treating physicians, the ALJ concluded that Plaintiff's subjective complaints and alleged limitations were not fully persuasive and that Plaintiff was capable of performing simple repetitive work, with simple instructions. A.R. 43.The ALJ then compared the demands of Plaintiff's previous jobs to his RFC, determining that Plaintiff could perform his past relevant work as a kitchen helper/dishwasher, as he had actually performed it previously, and as it is generally performed. *Id*. Finally, at step five, the ALJ opined that considering Plaintiff's age, education, work experience, and residual functional capacity, there are other jobs, such as trash collector, that exist in significant numbers in the national economy that Plaintiff could also perform. A.R. 44. Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the SSA. *Id*.

## II.   Standard of Review

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are considered conclusive by a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings

15

are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla" of evidence, but less than a preponderance of the evidence. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by substantial evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

## III.    Standard of Entitlement to Benefits

Disability insurance benefits may not be paid under the SSA unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id.* §§ 1382c (a)(3)(A)-(B).

The SSA establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n. 5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n. 5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling," and mental functions such as "understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." *Id.* A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if an impairment is found to be severe, the ALJ then determines whether the claimant's impairments meet or are equal to any impairment on the Impairment List. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his burden of proof and is automatically entitled to benefits. *See* 20 C.F.R. § 404.1520(d); *see Bowen*, 482 U.S. at 146-47 n. 5. If the specific impairment is not listed, the ALJ will consider in his decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is

medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he retains the RFC to perform his past relevant work. 20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141. If the claimant is able to perform his previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to his past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n. 5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and is not disabled. *Id.*

## IV.  Plaintiff's Claims on Appeal

Plaintiff argues that the ALJ erred at step two by failing to find that either Plaintiff's alleged ADHD or attention impairment were severe impairments. In addition, Plaintiff argues that the ALJ erred at step three in his determination that Plaintiff's impairments did not meet the requirements for an intellectual disability under Section 12.05(c), by failing to address significant supporting

medical evidence of ADHD and limited attention. Finally, Plaintiff argues that the ALJ erred at step four by failing to take into account Plaintiff's impairments in concentration and attention when formulating Plaintiff's RFC.

    *a.   The ALJ's Step Two Analysis*

The ALJ's step two analysis was brief, simply stating that "[t]he documented medical evidence of record consists of clinical and diagnostic findings, which when considered in the aggregate, support a conclusion that the above impairments [Plaintiff's borderline intellectual functioning] cause significant limitation on the claimant's ability to perform work activities during the period being adjudicated." A.R. 36. The ALJ did not analyze whether any of Plaintiff's other purported impairments constituted "severe" impairments under the meaning of the SSA.

Plaintiff argues that the ALJ's failure to consider Plaintiff's attention limitations or ADHD as a severe impairment was erroneous, and that error affected the ALJ's ultimate decision that Plaintiff was not disabled. Specifically, Plaintiff argues that had the ALJ found these impairments to be severe at step two, then subsequently, at step three, the ALJ would have determined that Plaintiff met the requirements of Section 12.05(c). However, even assuming that the ALJ's failure to find these impairments to be severe, at step two, was erroneous, because the ALJ resolved this step in Plaintiff's favor, any such error was harmless.

Step two of the five-step disability evaluation process serves as a threshold test to determine whether a claimant has any "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) ("[t]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims"). A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); *see*

19

*Plummer*, 186 F.3d at 428. Naturally, an erroneous determination at step two that a claimant has no severe impairments would be grounds for a remand, because the sequential evaluation process is immaturely cut short. *See Newell*, 347 F.3d at 546 (finding that an erroneous finding at step two of no severe impairments necessitated a remand). Here, however, because the ALJ found that Plaintiff suffered from a severe impairment of borderline intellectual functioning, the sequential evaluation process was not cut short, and indeed, the ALJ proceeded to the remaining steps. Thus, the error alleged by Plaintiff is harmless at step two, because failing to find additional severe impairments did not discontinue the ALJ's execution of the sequential evaluation process. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n 2 (3d Cir. 2007) ("Because the ALJ found in [plaintiff's] favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.") (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir.2005))); *see O'Neill v. Astrue*, 991 F. Supp. 2d 510, 518 (E.D. Pa. 2013*); see also Shineski v. Sanders, 556* U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." (citations omitted)). Indeed, step two had already been decided in Plaintiff's favor.

Plaintiff also argues that the ALJ's failure to find Plaintiff's attention related impairments to be severe at step two, prevented the ALJ from finding that his impairments satisfied the requirements of Section 12.05(c). However, at step three, an ALJ must again separately consider the medical severity of the claimant's impairments as compared to those on the Impairment List. 20 C.F.R. § 404.1520; *Williams*, 970 F.2d at 1186. Here, at step three, the ALJ evaluated whether Plaintiff's borderline intellectual functioning -- in combination with his other impairments, including limited attention and focus -- satisfied the requirements of Section 12.05(c). The fact that the ALJ did not find these additional impairments to be severe at step two, did not preclude

the ALJ from considering these impairments step three.[3] Therefore, the ALJ's step two determination was not dispositive of the outcome of Plaintiff's SSA claim, and consequently, does not provide a basis for reversal.

   b. *The ALJ's Step Three Analysis*

   Plaintiff contends that at step three, the ALJ failed to consider, or improperly discredited, relevant evidence supporting a conclusion that Plaintiff's impairments satisfied the requirements for an intellectual disability under Section 12.05(c). The requirements for Section 12.05(c) are met by "[1] [a] valid verbal, performance, or full scale IQ of 60 through 70 and [2] a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05(c). When analyzing the second prong of Section 12.05(c), an ALJ will "assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits [a claimant's] physical or mental ability to do basic work activities, i.e., is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)." 20 C.F.R. Pt. 404, Subpt. P, App. 1., 12.00(a). In short, even if a claimant has a qualifying IQ score, if he does not have a sufficiently severe additional impairment, Section 12.05(c) does not apply. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1., 12.00(a), 12.05(c).

   Plaintiff submits that an impairment will satisfy the requirements of Section 12.05 if it is "more than a slight abnormality." In support of this contention, Plaintiff cites to *McCrea*, 370 F.3d

---

   [3] Defendant contends that Section 12.05(c) requires finding at step two, in addition to severely impaired intellectual functioning, a second severe impairment. *See* in 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(a); *Markle v. Barnhart*, 324 F.3d 182, 187-88 (3d Cir. 2003). However, this second finding need not necessarily be made at step two, because at step three an ALJ must independently consider the severity of all claimant's impairments vis-à-vis the Impairment List. *See* 20 C.F.R. § 404.1520; *see Williams*, 970 F.2d at 1186.

357, and *Newell*, 347 F.3d at 546, wherein the Third Circuit explained that because step two is only a *de minimis* screening device, "[a]lthough the regulatory language speaks in terms of 'severity,' the Commissioner has clarified that an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *McCrea*, 370 F.3d at 360 (quoting SSR 85-28, 1985 WL 56856 at *3). However, *McCrea* and *Newall* focused on the definition of severity under step two, and therefore they are not dispositive of the analysis at step three with regard to Section 12.05(c). Despite this, as both parties point out, the Third Circuit has established that finding an additional impairment is severe at step two is enough to satisfy the second prong of Section 12.05(c). *Markle*, 324 F.3d at 188. Consequently, if an impairment has more than a minimal effect on a claimant's residual functional capacity, it should be considered severe for the purposes of Section 12.05(c). *See Id* at 184, 182.

Here, the ALJ determined that Plaintiff's impairments satisfied the IQ score requirement of the first prong of Section 12.05(c). The ALJ found probative Plaintiff's many IQ test scores, including indications in his school records that Plaintiff received a full scale IQ score of 65, Dr. Coffey's determination that Plaintiff's full scale IQ score was 66, and Dr. Mosby's determination that Plaintiff's full scale IQ score was 62. However, the ALJ determined that Plaintiff's impairments did not satisfy the second prong of Section 12.05(c). First, the ALJ found, and Plaintiff does not dispute, that there was no evidence in the record that Plaintiff had any physical impairments. Next, the ALJ determined that Plaintiff's other mental impairments, including his alleged ADHD and limited attention, did not significantly limit Plaintiff's ability to perform basic work activities. Plaintiff contends that on these determinations, the ALJ erred by 1) failing to

22

consider evidence that Plaintiff's ADHD and limited attention, significantly impaired Plaintiff's ability to perform basic work activities; and 2) improperly discrediting evidence of the same.

In making a disability determination, the ALJ must consider all evidence before him. *See e.g. Plummer*, 186 F.3d at 433; *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986). Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. *See Burnett v. Comm'r of Soc. Sec. Admin*., 220 F.3d 112, 121 (3d Cir. 2000); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). For example, in *Burnett*, the Third Circuit held that the ALJ had not properly decided an evidentiary issue because he "fail[ed] to consider and explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination." 220 F.3d at 121. "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. Consequently, an ALJ's failure to note if pertinent evidence was considered, or to explain why such information was not credited, are grounds for a remand. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 435 (3d Cir. 1999).

Here, consulting doctors Coffey and Mosby each diagnosed Plaintiff, "by history," with ADHD during the course of their respective one-time examination of Plaintiff. However, the ALJ discounted these doctors' conclusions, in that regard, because they were "solely based upon the claimant's subjective description of his history, and [were] not the result of the findings of [their] examination[s]." A.R. 37. In addition, the ALJ relied on Dr. Vitolo's assertion that the record did not support a finding that Plaintiff had ADHD, because there was no evidence, other than Plaintiff's own self-reporting, that Plaintiff had ever been formally diagnosed with ADHD or had

23

ever received Ritalin, or other treatment, for the disorder, and his school records contained no evidence of hyperactive behavior.

However, Plaintiff argues that the ALJ improperly discounted Drs. Coffey and Mosby's diagnosis of ADHD, because other portions of their reports, in addition to Plaintiff's history, supported a diagnosis of ADHD.[4] Specifically, Plaintiff points to Dr. Coffey's observation that Plaintiff had limited concentration and limited mental pace, as well as Dr. Mosby's notes that Plaintiff "appeared easily frustrated, mildly tired and wanting to finish the test towards the end of testing" and his "attention level was poor given his history and as indicated on the WAIS IV." A.R. 518, 520. While Plaintiff is correct that the ALJ did not acknowledge that these symptoms, may result from ADHD, the ALJ reasonably relied on Dr. Vitolo's assessment that these observations, in and of themselves, were insufficient to form the basis of a diagnosis of ADHD. A.R. 63 (Dr. Vitolo stated "The only indication in the record here was that the claimant complained of difficulty with attention and ability to focus and that there's a big difference between that and arriving at the diagnosis of attention deficit hyperactivity disorder."). Moreover, the ALJ reasonably relied on the statements in Dr. Coffey and Dr. Mosby's own reports that the diagnoses of ADHD were made "by history," based on the Plaintiff's own subjective complaints. A.R. 508,

---

[4] Plaintiff alternatively argues that since ADHD is clinically diagnosed "almost entirely based on a presentation of symptoms," it is illogical to discount a diagnosis of ADHD for the sole reason that it was made entirely on the basis of a patient's subjective description of his history. Pl.'s Br. Pursuant to L. Civ. R. 9.1 ("Pl.'s Br.") 12 (citing Centers for Disease Control and Prevention, citing to the *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders*, 5th edition. Arlington, VA., American Psychiatric Association, 2013. (http://www.cdc.gov/ncbddd/adhd/diagnosis.html) (accessed on February 16, 2015)). However, to the contrary, it is entirely reasonable that an ALJ should discount a diagnosis of ADHD that was based solely on a patient's subjective history, where there is minimal objective medical evidence supporting such a diagnosis and an impartial medical expert opines that the diagnosis is inappropriate.

521. Furthermore, there was no evidence in the record, other than Plaintiff's own self-reporting, that Plaintiff had ever been formerly diagnosed with ADHD by a treating physician or that Plaintiff was ever administered Ritalin, or any other medication, for ADHD. Consequently, the ALJ's decision to discount Drs. Coffey and Mosby's diagnoses of ADHD was supported by substantial evidence.

Plaintiff also contends that the ALJ failed to address evidence of Plaintiff's ADHD in his school records, when the ALJ concluded that the Individual Educational Program "indicates that Plaintiff was a cooperative and friendly student, with no behavioral concerns." A.R. 37. Specifically, Plaintiff points to a page of the August 2002 Individual Education Program, which states that "Jesse's behavior impedes learning or the learning of others in the classroom" and that his target improved behaviors included increasing task related behaviors. A.R. 335. Plaintiff also cites to the March 2003 Individual Education Program, which references Plaintiff's "difficulty completing assignments." A.R. 394, 421. First and foremost, these behaviors outlined by Plaintiff's school records do not necessarily constitute a finding of ADHD. Moreover, although the ALJ appears to have overlooked these school records, the records themselves contain self-contradictory statements that Plaintiff had both *no* behavioral issues and *some* task related behavioral issues. The fact that no medical or school records indicate that Plaintiff was ever formally diagnosed with any mental disorder or prescribed Ritalin or any other psychiatric treatment medication, in combination with Dr. Vitolo's opinion, provide more than sufficient justification for the ALJ to find that, based on the records before him, Plaintiff did not have ADHD.

Plaintiff also claims that the ALJ failed to address "Dr. Vitolo's [testimony] that Plaintiff's limited concentration and limited persistence and pace would rise to at least the level of a severe impairment, something more than minimal." Pl.'s Br. 13. Plaintiff argues that even if the ALJ

properly determined that Plaintiff did not have ADHD, he should have found that, regardless of the nomenclature, Plaintiff's attention related impairments were severe under the meaning of Section 12.05(c). Admittedly, Dr. Vitolo testified that Plaintiff's limited concentration, persistence, and pace, "while not listing level" could be considered "something more than minimal." A.R. 66. However, Dr. Vitolo also opined that taking all of Plaintiff's impairments into account, they did not satisfy the second prong of Section 12.05(c), because Plaintiff was still capable of performing simple repetitive tasks with one-to-two step commands. The ALJ reasonably interpreted Dr. Vitolo's testimony to mean that Plaintiff's limited concentration, persistence, and pace, were not severe enough qualify as an "additional and significant work-related limitation of function" under Section 12.05(c). Moreover, it is apparent that the ALJ accounted for this portion of Dr. Vitolo's testimony in coming to this conclusion, because he explicitly notes that Dr. Vitolo found Plaintiff to be "moderately limited in concentration, persistence, or pace" before citing Dr. Vitolo's opinion regarding Plaintiff's RFC. A.R. 42. Contrary to Plaintiff's assertions, the ALJ did not fail to address this portion of Dr. Vitolo's testimony.[5]

---

[5] Plaintiff also contends that the ALJ improperly read section 12.05 of the Impairment List to require certain deficits in adaptive functioning as a threshold requirement to find an intellectual disability. Section 12.05 of the Impairment List specifies that "[i]ntellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. Under the ALJ's reading of this language, for Plaintiff to meet the requirements of Section 12.05(c), before age 22, he would need to have 1) subaverage general intellectual functioning, 2) deficits in adaptive functioning, 3) a valid verbal, performance, or full scale IQ of 60 through 70, and 4) a physical or other mental impairment imposing an additional and significant work-related limitation of function. Plaintiff asserts that only the third and fourth factors need to be met to satisfy Section 12.05(c). Here, because I have upheld the ALJ's finding that Plaintiff did not meet the requirements

   c.  *The ALJ's Step Four Analysis*

Finally, Plaintiff contends that the ALJ failed to take into account Plaintiff's impairments in concentration and attention when formulating Plaintiff's RFC. At step four of his analysis, the ALJ determined that Plaintiff was capable of performing simple, repetitive tasks with simple instructions, at all exertional levels. According to Plaintiff, had the ALJ considered Plaintiff's attention related impairments, he would have necessarily included an attention related limitation in the RFC, such as being unable maintain attention for more than two hours.

However, when determining Plaintiff's RFC, the ALJ made multiple references to evidence regarding Plaintiff's limited concentration and attention. Indeed, the ALJ determined that Plaintiff has moderate difficulties with persistence and pace based on the following: Plaintiff's Adult Function Report, which indicated Plaintiff had difficulty remembering directions, but could still finish certain tasks, such as daily chores, and enjoyed playing video games; Mr. Garcia Sr.'s statement and Dr. Mosby's report, both of which stated that Plaintiff's attention level was poor, but that he enjoyed playing video games; and the assessments of Dr. D'Adamo, Dr. Shapiro, and Dr. Vitolo's, which found Plaintiff's concentration, persistence, or pace, moderately limited. The ALJ reasonably relied on the opinions of Dr. Mosby, Dr. D'Adamo, Dr. Shapiro, and Dr. Vitolo to find that Plaintiff's moderately limited concentration would not preclude him from performing simple rote labor. Moreover, based on these medical opinions, the ALJ reasonably rejected the statements of Mr. Garcia Sr. and Plaintiff, to the extent that they did not support the RFC, because

---

of the fourth factor, I need not rule on which interpretation of section 12.05 of the Impairment List is correct.

they contradicted this objective medical evidence.[6] The ALJ's conclusion that Plaintiff was capable of performing simple, repetitive tasks with simple instructions at all exertional levels was supported by substantial evidence.

**V.    Conclusion**

The ALJ's decision on Plaintiff's disability claim properly considered the pertinent evidence of Plaintiff's impairments and was based in substantial evidence. The ALJ's decision is therefore affirmed. An appropriate order shall follow.


Dated: December 8, 2015


                                           /s/ Freda L. Wolfson
                                           Freda L. Wolfson
                                           U.S. District Judge

---

[6] Plaintiff argues that "the ALJ did not specify the weight he assigned to Plaintiff's father's statements" and "[t]herefore, it is impossible for Plaintiff or a reviewing court to ascertain how much weight, if any, he assigned these statements, and whether he evaluated these statements pursuant to the factors required by SSR 06-3p." Pl.'s Reply Br. 12; *see Burnett,* 220 F.3d at 122 ("The ALJ's failure to mention and explain this contradictory medical evidence was error."). However, the ALJ explicitly credited Mr. Garcia Sr.'s statements "to the extent that they are consistent with the claimant's residual functional capacity as assigned," A.R. 40, which sufficiently enables Plaintiff or any reviewing court to determine which of Mr. Garcia Sr.'s statements the ALJ credited or discredited.

28